**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DEBORAH D. DiMAGGIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-08-854-M |
| ) | |
| THE STATE OF OKLAHOMA, ex rel., ) | |
| THE DEPARTMENT OF CENTRAL ) | |
| SERVICES, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This case is scheduled for trial on the Court's September 2009 trial docket.

Before the Court is defendant's Motion for Summary Judgment, filed July 1, 2009. On August 3, 2009, plaintiff filed her response, and on August 13, 2009, defendant filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.   Introduction

On June 2, 2005, plaintiff received an unclassified appointment to the Department of Central Services' ("DCS") Construction and Properties ("CAP") Division as a professional engineer, effective July 1, 2005. During her time with DCS, plaintiff was either a project manager or a senior project manager.[1]

In April 2006, plaintiff was verbally counseled by Ron DeLuca, who was her immediate supervisor at the time, to be sure to sign in and out when she returned from field trips. Plaintiff

---

[1] When plaintiff began her employment with CAP, she was a project manager. On September 20, 2007, plaintiff became a senior project manager. On July 1, 2008, CAP discontinued the use of the designation senior project manager, and all senior project managers, including plaintiff, reverted back to project managers. No salary adjustments were made as a result of the discontinuation of the designation senior project manager.

contends that when she was counseled, she showed Mr. DeLuca sheets where her male counterparts did not sign in or out, but Mr. DeLuca simply stated that the males just forget sometimes. In August 2007, Mike Jones, plaintiff's immediate supervisor at the time, counseled plaintiff, both verbally and in writing, regarding various alleged violations of the policies and procedures. Specifically, Mr. Jones counseled plaintiff regarding the following:

(1) Plaintiff had been observed leaving early in the day without signing out, and often without returning to work to complete her work day after site visits or meetings;

(2) Plaintiff's failure to use her assigned state parking spot;

(3) Plaintiff's use of her personal vehicle, rather than a state vehicle, on state business;

(4) Plaintiff's failure to sign in and out when she leaves and returns to the office;

(5) The duration of plaintiff's road trips;

(6) Plaintiff's scheduling of site visits and other meetings during the same time period as the regularly scheduled Friday morning CAP staff meeting and project managers' meeting; and

(7) Ghost employee issues.

Defendant further contends that after the August 2007 counseling, plaintiff did not change her work behavior.

On November 5, 2007, plaintiff was given a Corrective Action Plan during a meeting with John Richard[2], Mr. Jones, John Morrison, and Delmas Ford and was placed on probation for six months. At the meeting, plaintiff indicated that she disagreed with the Corrective Action Plan and the criticisms and that she was not going to sign the plan. In her response to the Corrective Action Plan, plaintiff indicated that she believed she was being discriminated against because of her gender.

---

[2]Mr. Richard is the Director of DCS.

2

In January 2008, Mr. Jones completed plaintiff's annual written performance evaluation ("PMP") for the 2007 calendar year. Plaintiff received an overall rating of Meets Standards[3]; however, plaintiff contends that Mr. Jones changed her PMP in several categories from Exceeds Standards to Meets Standards.

On January 11, 2008, plaintiff filed a Charge of Discrimination asserting that she was discriminated against on the basis of her gender, and specifically that she is made to adhere to rules and regulations which the male project managers are not required to follow. On July 10, 2008, plaintiff filed a second Charge of Discrimination, claiming gender discrimination and retaliation. On August 6, 2008, Mr. Jones emailed plaintiff and advised her that her probationary period for corrective discipline had expired, that she had exhibited good employee behavior and her performance as a project manager had been very good, and that she could discontinue any actions that were a condition of the Corrective Action Plan.

On August 18, 2008, plaintiff filed the instant action, asserting claims for gender discrimination and retaliation. On January 15, 2009, plaintiff was terminated allegedly for continued violations of the policies and procedures. On February 4, 2009, plaintiff filed her third Charge of Discrimination, asserting that she had been discriminated against on the basis of retaliation. On April 27, 2009, plaintiff filed an Amended Complaint in this action. Defendant now moves for summary judgment on all of plaintiff's claims.

II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving

---

[3]Plaintiff received the same overall rating on her PMP for the calendar year 2006.

party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.   Discussion[4]

   A.   Title VII gender discrimination claim

To establish a prima facie case of gender discrimination, plaintiff must show (1) membership in a protected class; (2) adverse employment action; and (3) disparate treatment among similarly situated employees. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). Defendant asserts that, in relation to her gender discrimination claim, plaintiff did not suffer an

---

[4]In its motion, defendant moves for summary judgment as to plaintiff's hostile work environment claims. In her response, plaintiff does not address the issue of hostile work environment. Accordingly, the Court finds that summary judgment should be granted as to any hostile work environment claims that plaintiff is, in fact, asserting.

adverse employment action. Plaintiff asserts that the Corrective Action Plan and being placed on probation for six months constitute adverse employment actions.

"Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006) (internal quotations and citation omitted). Nonetheless, the Tenth Circuit liberally interprets whether an adverse employment action exists and determines its existence on a case by case basis. *Id.*

> Disciplinary proceedings, such as warning letters and reprimands, can constitute an adverse employment action. A reprimand, however, will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment - for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities.

*Medina v. Income Support Div., State of N.M.*, 413 F.3d 1131, 1137 (10th Cir. 2005) (internal citations omitted). Additionally, a corrective action plan, standing alone, is not an adverse employment action. *Haynes*, 456 F.3d at 1224.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds plaintiff has not shown an adverse employment action in relation to her gender discrimination claim. Specifically, the Court finds that the Corrective Action Plan and plaintiff's being placed on probation for six months do not constitute adverse employment actions. Neither the Corrective Action Plan nor being placed on probation adversely affected the terms and conditions of plaintiff's employment; these actions did not affect the likelihood that plaintiff would

be terminated, did not undermine plaintiff's current position, did not affect plaintiff's future employment opportunities, and did not effect plaintiff's pay or benefits. In fact, on August 6, 2008, Mr. Jones emailed plaintiff and advised her that her probationary period for corrective discipline had expired, that she had exhibited good employee behavior and her performance as a project manager had been very good, and that she could discontinue any actions that were a condition of the Corrective Action Plan.

Accordingly, because plaintiff has not shown that she suffered an adverse employment action in relation to her gender discrimination claim, the Court finds that plaintiff can not establish a prima facie case of gender discrimination. The Court, therefore, finds that defendant is entitled to summary judgment as to plaintiff's gender discrimination claim.

B.   Title VII retaliation claim

Plaintiff asserts that she experienced adverse employment actions in retaliation for her engagement in protected activities when her PMP was changed by the lowered rating on several categories and when she was terminated from employment. Defendant contends that these actions were not in retaliation for plaintiff's engagement in protected activities and that plaintiff was terminated based upon her continued violations of policy and procedures.

To establish a prima facie case of retaliation, plaintiff must show that (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have considered the challenged employment action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action. *Hinds v. Sprint/United Mgmt., Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008). In the case at bar, it is undisputed that plaintiff engaged in protected opposition to discrimination.

To establish the second element, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Having carefully reviewed the parties' submissions, the Court finds that plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether a reasonable employee would have considered the challenged employment actions materially adverse.  Specifically, the Court finds that there is no dispute that plaintiff's termination is a materially adverse action.  Further, the Court finds that plaintiff has presented sufficient evidence showing that lowering the ratings on an employee's PMP might well dissuade a reasonable worker from making or supporting a charge of discrimination.

Finally, to establish the requisite causal connection, a plaintiff must show that the defendant was motivated to carry out the materially adverse action by a desire to retaliate for the plaintiff's protected activity.  *Hinds*, 523 F.3d at 1203.  Further, even if the timing between the protected activity and the material adverse action, alone, would not support an inference of causation, "[i]f the employee can show that the employer's proffered reason for taking adverse action is false, the factfinder could infer that the employer was lying to conceal its retaliatory motive."  *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1316-17 (10th Cir. 2006) (internal quotations and citation omitted).

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether a causal connection exists between the alleged material adverse actions – the lowering of ratings on plaintiff's PMP and plaintiff's termination – and her protected activity – her initial claim of gender

7

discrimination made to defendant, her two Charges of Discrimination, and the filing of this lawsuit. Specifically, the Court finds that plaintiff has presented evidence from which the factfinder could infer that defendant was lying about its reasons for the above actions to conceal its retaliatory motives. Plaintiff has presented evidence that on August 6, 2008, Mr. Jones advised her that her probationary period for corrective discipline had expired, that she had exhibited good employee behavior and her performance as a project manager had been very good, and that she could discontinue any actions that were a condition of the Corrective Action Plan. Plaintiff has further presented evidence that Mr. Jones, plaintiff's immediate supervisor and the individual who recommended plaintiff's termination, could only recall one instance of plaintiff's poor work habits after August 6, 2008. Additionally, plaintiff has presented evidence that plaintiff was not made aware of, nor counseled regarding, any additional violations after her probationary period expired.

"Once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action." *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996). As set forth above, defendant has articulated a legitimate, nondiscriminatory reason for the adverse actions – plaintiff's alleged continued violations of policy and procedure.

If the defendant sets forth a legitimate, nondiscriminatory reason, the plaintiff must then establish that the reason is merely a pretext for retaliation. *Id.* at 986. As set forth above, the Court finds plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether defendant's reasons for its adverse actions are pretextual. *See Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1219 (acknowledging that in some cases, evidence of causation and evidence of pretext may be the same and the tests for causation and pretext may be conflated).

Accordingly, the Court finds that summary judgment should not be granted as to plaintiff's Title VII retaliation claims.

  C. State law *Burk*[5] tort claims

In the case at bar, plaintiff is also asserting state law *Burk* tort claims against defendant based upon defendant's alleged gender discrimination and retaliation. The Oklahoma Governmental Tort Claims Act ("OGTCA"), Okla. Stat. tit. 51, § 151, et seq., is the "exclusive remedy for an injured plaintiff to recover against a governmental entity in tort." *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009). In order to recover under the OGTCA, a person must present a claim to the state within the scope of the OGTCA, and such claim must be presented within one year of the date the loss occurs or it is forever barred. Okla. Stat. tit. 51, § 156. "Compliance with notice of claim provisions has been interpreted to be either a condition precedent to suit against [the State] or a jurisdictional prerequisite to judicial intervention." *Gurley v. Mem'l Hosp. of Guymon*, 770 P.2d 573, 576 (Okla. 1989).

Because plaintiff's state law claims are tort claims against a governmental entity and because it is undisputed that plaintiff has not filed a notice of tort claim with respect to her state law *Burk* tort claims, the Court finds that plaintiff can not maintain her state law *Burk* tort claims.

IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART defendant's Motion for Summary Judgment [docket no. 22] as follows:

  (1) The Court GRANTS the motion for summary judgment as to plaintiff's Title VII gender discrimination claims and plaintiff's state law *Burk* tort claims, and

---

[5]*Burk v. K-Mart*, 770 P.2d 24 (Okla. 1989).

(2)  The Court DENIES the motion for summary judgment as to plaintiff's Title VII retaliation claims.

**IT IS SO ORDERED this 1st day of September, 2009.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE